364 A.2d 684

**COMMONWEALTH of Pennsylvania**

v.

**Vincent COURTS, Appellant.**

Supreme Court of Pennsylvania.

Argued May 6, 1976.

Decided Oct. 8, 1976.

614

William J. Kerpan, Philip D. Freedman, Harrisburg, for appellant.

Marion E. MacIntyre, 2nd Asst. Dist. Atty., Reid H. Weingarten, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant Vincent Courts was arrested for the murder of Ralph Jones, which occurred during the early morning hours of March 24, 1974, in the City of Harrisburg. After trial before a jury a verdict of murder of the first degree was returned.[1]  Post-trial motions were filed, argued, denied and a sentence of life imprisonment was imposed.  This direct appeal follows in which the only issue presented is the sufficiency of the evidence to support the verdict.

At approximately 3:00 A.M., appellant was operating a vehicle in which he had a number of passengers.  After an accident which caused only slight damage to appel-

---

1. A verdict of guilt was also returned for the attempted murder and aggravated assault upon Alan Jones (no relation to the deceased) arising from the same incident.  This conviction has been consolidated with the appeal from the murder conviction.

lant's vehicle, Courts became enraged and blamed one of the passengers, Alan Jones, for the mishap. At gun point appellant demanded that Alan pay him one hundred dollars for the damage. When Alan realized he could not satisfy Courts by explaining that he did not have the money he suggested that they go to the home of Ralph Jones, who Alan thought might be willing to pay the sum for him. Appellant directed that another passenger, Randolph Lee, drive the vehicle to Ralph's home while he sat in the back with a gun pointed at Alan Jones. Jones later identified the weapon as a .22 calibre pistol.

Upon arriving at Ralph Jones' home, Courts and Alan left the vehicle while Lee remained at the wheel. Ralph Jones answered the door clad in his pajamas and the three men discussed the money on the doorstep of the home. Courts pushed Alan Jones across the doorway and shot him once in the head. Alan fell to the floor of the vestibule but remained conscious. He testified that he heard Courts forcing Ralph into his apartment repeating his demand for the money.

Upon hearing the gunshot, Lee left the car, entered the building and found Alan Jones lying conscious in the vestibule. He did not see either Courts or Ralph Jones. Alan Jones was able to get up to his feet and fled from the building. Lee followed shortly afterwards. Several minutes later, as Lee was walking along a nearby street, Courts who was again in the vehicle, approached him and showed him approximately three hundred and twenty dollars in cash, stating "this should take care of the damage to the car." [2] Approximately one hour later, Ralph was found dead, lying face down on his bed. An autopsy revealed that the cause of death was a gunshot

---

**2.** At trial, appellant testified that immediately after the shooting of Alan Jones the deceased threw up his hands and said he would give Courts $100.00. Courts told the deceased that he (the deceased) should give Courts whatever money he had and that Alan Jones would reimburse him.

wound to the left temple and a .22 calibre bullet was removed from his brain. Fortunately, Alan Jones recovered from his wound.[3] At the time of his arrest, later during the day of the incident, a .22 calibre pistol was taken from Courts.

Appellant argues that the Commonwealth's evidence failed to establish the offense of murder of the first degree because no one saw Courts fire the fatal shot. It is argued that the witnesses heard only one shot which was the shot that struck Alan Jones and Courts had no motive for killing Ralph since he had agreed to turn over the money.

Where a claim of sufficiency of the evidence has been raised, it is our task on appellate review to determine whether accepting as true all of the evidence and all of the inferences therefrom upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that a defendant is guilty of a crime or crimes of which he has been convicted. *Commonwealth v. Bayard,* 453 Pa. 506, 509, 309 A.2d 579, 581 (1973); *Commonwealth v. Paquette,* 451 Pa. 250, 301 A.2d 837 (1973); *Commonwealth v. Williams,* 450 Pa. 327, 329, 301 A.2d 867, 869 (1973); *Commonwealth v. Wright,* 449 Pa. 358, 360, 296 A.2d 746, 747 (1972); *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972). Further, there need not be direct evidence to establish the elements of the crime. *Commonwealth v. Graham,* 467 Pa. 417, 358 A.2d 56 (1976); *Commonwealth v. Cox,* 466 Pa. 582, 353 A.2d 844 (1976). This burden may be sustained by means of wholly circumstantial evidence. *Commonwealth v. Stanley,* 453 Pa. 467, 469, 309 A.2d 408, 410 (1973); *Commonwealth v. Amato,* 449 Pa. 592, 594, 297 A.2d 462, 464 (1972); *Commonwealth v. McFadden,* 448 Pa. 146, 149, 292 A.2d 358, 360 (1972); *Commonwealth v. Chester,*

---

**3.** The bullet removed from the head of Alan Jones was also a .22 calibre.

410 Pa. 45, 50, 188 A.2d 323, 327 (1963). As we noted in *Commonwealth v. Stanley,* supra:

> "We also recognize that while the Commonwealth must establish every essential element of a crime beyond a reasonable doubt, this burden may be sustained by means of wholly circumstantial evidence." *Id.* 453 Pa. at 469, 309 A.2d at 410.

We further stated in *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973):

> "As we noted in *Commonwealth v. Paquette,* supra, it is not fatal that the Commonwealth cannot establish by direct evidence that these blows causing the fatal injury were inflicted by human agency. 'Admittedly, there were no eyewitnesses to the alleged beating; but the Commonwealth need not prove its case directly. Circumstantial evidence can be as reliable and persuasive as eyewitness testimony.'" *Id.* at 486, 309 A.2d at 424.

Under the facts of this case, it is clear that appellant became furious as a result of an accident which caused minimal damage, admittedly shot and seriously wounded one of his companions, forced his entry into the home of a stranger at gun point, was seen later with money admittedly obtained from this stranger and shortly thereafter that stranger was found dead with a bullet in his skull with the same calibre as the weapon possessed by appellant. We can conceive of no instance where circumstantial evidence could form a tighter web of guilt and clearly establish a killing during the perpetration of a robbery.[4] It cannot be seriously maintained that because one accedes to the demand for money at gun point that he has voluntarily given the money. Further, the deceased's apparent acquiescence when he was observed by Alan Jones does not negate the conclusion that he was

---

4. The pertinent statute in effect at the time of this crime was the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.S. § 2502, eff. June 6, 1973.

thereafter shot by his assailant. That appellant possessed a state of mind that did not require serious provocation for inflicting the fatal wound is graphically demonstrated by his shooting of Alan Jones. Nor are we impressed by the fact that the witnesses who were outside only heard the shot which occurred in the vestibule and did not hear the shot that occurred in the interior of the home.

Judgment of sentence affirmed.